695 So.2d 394 (1997)
FORTUNE INSURANCE COMPANY, Appellant,
v.
Ivan PACHECO, Appellee.
No. 96-1039.
District Court of Appeal of Florida, Third District.
April 30, 1997.
Diane H. Tutt, Plantation, for appellant.
Alfonso Salcines, Coral Gables; Robert S. Glazier, Miami, for appellee.
Ronald L. Kammer, Miami, for the Florida Defense Lawyers Association, Bankers Insurance Company, Integon Insurance Company, and Armor Insurance Company as amicus curiae.
Edward S. Schwartz, Miami, for the Academy of Florida Trial Lawyers as amicus curiae.
Before SCHWARTZ, C.J., and NESBITT, JORGENSON, COPE, LEVY, GERSTEN, GODERICH, GREEN, FLETCHER, SHEVIN and SORONDO, JJ.
JORGENSON, Judge.
This cause is before us on a question certified by the Dade County Court as being one of great public importance. We agree that the issue is one of great public import and therefore have en banced this case to settle the law in this district; in so doing, we align ourselves with the First and Fourth districts.
The Dade County Court certified the following question:
WHETHER § 627.736(4)(B), FLA. STAT. REQUIRES A PIP [PERSONAL INJURY PROTECTION] INSURER TO PAY THE CLAIMED BENEFITS WITHIN THIRTY DAYS OF RECEIPT OF THE CLAIM OR WITHIN THIRTY DAYS OF RECEIPT OF MEDICAL VERIFICATION OF THE CLAIM.
We rephrase the question as follows:
CAN A PIP INSURER REQUIRE AN INSURED TO SUBMIT ALL SUPPORTING MEDICAL RECORDS BEFORE THE THIRTY (30)-DAY TIME PERIOD FOR PAYMENT OF THE CLAIM BEGINS TO RUN?
*395 We answer the question, as rephrased, with a resounding "no," and, based upon twenty-two years of established law, affirm the final summary judgment entered for the insured, Ivan Pacheco.
Ivan Pacheco suffered injuries in an automobile accident. He notified Fortune of the accident and on January 25, 1995, he filed a claim letter; medical bills in the amount of $5,992.98; medical reports; a PIP form; and a copy of the police report. Fortune forwarded the records to a reviewing company, and, twenty-four days after Pacheco filed the request for payment, the reviewing company sent a letter to one of Pacheco's health care providers, requesting among other items, diagnostic testing results including graphs, x-rays, and all office notes. Fortune did not pay the claim until after the thirty-day deadline, and only after Pacheco had filed suit for his PIP benefits. When Pacheco moved for summary judgment on the basis that Fortune's failure to timely pay benefits required him to file a lawsuit and incur attorney's fees, Fortune argued that the terms of the policy required Pacheco to submit, with his claim for benefits, all supporting medical records. The policy reads as follows:
Reasonable proof of claim shall include but not be limited to: a) properly completed Florida Application for No-Fault Benefits; and b) accident report as specified in Chapter 316 of Florida Statutes; and c) all medical expenses incurred as a result of the accident and all supporting medical records. (Emphasis added.)
The trial court entered summary judgment for Pacheco; we affirm.
Section 627.736(4), Florida Statutes (1993), provides that PIP benefits "shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy." (Emphasis added.) The same statute provides that PIP benefits "shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same." The statute does not define "reasonable proof" of loss; Fortune chose to include its own definition of "reasonable proof" in its policy to include all supporting medical records. By so defining the term, Fortune sought to determine when the thirty-day period to pay the claim would begin to run, and thus circumvent long-established case law that once an insurer receives notice of a loss and medical expenses, it must pay within thirty days, unless, pursuant to section 627.736(4)(b), it has obtained reasonable proof to believe that it is not responsible for the payment.
Since 1974, Florida courts have uniformly held that
the statutory language is clear and unambiguous. The insurance company has thirty days in which to verify the claim after receipt of an application for benefits. There is no provision in the statute to toll this time limitation. The burden is clearly upon the insurer to authenticate the claim within the statutory time period. To rule otherwise would render the recently enacted "no fault" insurance statute a "no-pay" plana result we are sure was not intended by the legislature.
Dunmore v. Interstate Fire Ins. Co., 301 So.2d 502, 502 (Fla. 1st DCA 1974) (emphasis added). The Fourth District followed the holding in Dunmore, emphasizing that it is the insurer's burden to "authenticate the claim within the statutory time period." Martinez v. Fortune Ins. Co., 684 So.2d 201, 203 (Fla. 4th DCA 1996). Likewise, this court followed Dunmore, holding that the insurance company could not create an exception to the thirty-day rule by requiring that a claim be submitted on a particular in-house claims form. Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266 (Fla. 3d DCA 1995). This court, like the First and Fourth Districts, emphasized that there is no statutory provision that tolls the thirty-day period, and that the burden is on the insurer to authenticate the claim within thirty days. Crooks, 659 So.2d at 1268.
Fortune attempts to distinguish Crooks and Dunmore by reasoning that neither case construed the phrase "reasonable proof of such loss," and neither case analyzed whether an insurer could itself define that phrase. Although Fortune is correct on both counts, it overlooks the broader holding of both casesthat the legislature provided no exceptions *396 to the thirty-day period, and that courts will not countenance insurers' attempts to create their own means of tolling that period.[1]
Although it is entirely permissible for the insurer to require supporting medical records, the insurer cannot require the claimant to furnish those records before the thirty-day period begins to run. The insured fulfills his obligation to furnish medical records upon signing a waiver of confidentiality that allows the insurer to procure the records directly from the provider, who has the records, and who awaits payment. It is a common-sense proposition that patients, as a rule, do not have in their possession or control their own medical records. Despite that, Fortune urges that the insurer should be the one to determine what quantum of proof is reasonable and how many tomes of "supporting" medical records it may require the claimant to provide.
Under Fortune's interpretation of its policy, carriers would have the unilateral power to determine when they could safely declare that they had received reasonable proof of loss, and then allow the thirty-day period to begin running. That view would obliterate the thirty-day period by allowing the insurer to determine when it began.
AFFIRMED.
SCHWARTZ, C.J., and LEVY, GERSTEN, GODERICH, GREEN, SHEVIN and SORONDO, JJ., concur.
COPE, J., specially concurs.
COPE, Judge (specially concurring).
In my view, the insurer is allowed to include within its insurance policy a definition of the statutory term "reasonable proof of such loss." § 627.736(4), Fla. Stat. (1993). Further, in deciding what is "reasonable" proof of loss, the insurer may consider the fact that benefits must be paid within thirty days after submission of the completed claim. See Id. § 627.736(4)(b).
The appellant insurer states that many personal injury protection (PIP) claims are facially reasonable and require no investigation. The insurer states, however, that certain specific categories of claim raise questions as to their reasonableness and necessity. These are the claims the insurer desires to investigate.
The insurer's solution to this problem was to insert in its insurance policy a provision which required the submission of complete medical records in all cases, even though the insurer concedes that a review of medical records is unnecessary in many, or even most, cases. That being so, requiring the submission of complete medical records in all cases is unreasonable, and goes beyond the statutory phrase, "reasonable proof of such loss." Id. § 627.736(4). Conceivably a more narrowly drawn policy provision could pass muster.
The majority opinion suggests that an insurance company can never include in its insurance policy a definition of the statutory phrase, "reasonable proof of such loss." Id. The cited cases do not discuss that issue. It seems to me that an insurer is allowed to prescribe what must be in the proof of loss, so long as the required contents are "reasonable" and consistent with the statute.
For the reasons stated, I concur in the judgment in this case.
NESBITT and FLETCHER, JJ., concur.
NOTES
[1] In its amicus brief, the Florida Defense Lawyers Association does not discuss any of the cases from the three districts that have unequivocally enforced the thirty-day period. Nor does the brief cite any case to support the proposition that an insurance company has the authority to define "reasonable proof of such loss" to require a claimant to provide supporting medical records before the period begins to run. Instead, the defense lawyers portend calamity and ruin at the hands of fraudulent claimants if insurers are not allowed to determine when a claim is sufficiently supported so as to begin the thirty-day period.

There is no suggestion in the record that this insured's claim was fraudulent. If fraud is suspected, then the company or the Division of Insurance Fraud should investigate.